UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
IINDIANAPOLIS DIVISION

| | |
|---|---|
| LASHANNA R. TUTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-0652-DKL-RLY |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

*Entry on Judicial Review*

Plaintiff Lashanna R. Tutson appeals the decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI"). *See* 42 U.S.C. § 405(g). The parties have consented to the Magistrate Judge's exercise of jurisdiction. For the reasons that follow, the Court finds that the Commissioner's decision should be affirmed.

I.     Background

In August 2012, Tutson filed an application for supplemental security income, alleging disability beginning January 1, 1999, because of depression and degenerative disk disease. [R. 136.] Tutson was 25 years old at her alleged onset date. Her claim was denied initially and on reconsideration. She requested an administrative hearing; in September 2013 a hearing was held before Administrative Law Judge ("ALJ") Lisa B.

Martin. Tutson, who was represented by counsel, appeared and testified; an impartial vocational expert ("VE") also testified.

Tutson submitted medical records in support of her applications for benefits.[1] Included among them were treatment records from her primary care physician, Julie A. Vannerson, M.D., emergency room records, and rehabilitation records. The records reflect that Tutson treated with Dr. Vannerson from June 2011 to March 28, 2012, and again on April 9, 2013 and June 2013. On June 27, 2013, Dr. Vannerson noted that Tutson's pain "has been well-controlled on pain medication. [R. 476.]

In late March 2013, Tutson suffered a gunshot wound to her left leg, resulting in a tibia fracture and compartment syndrome. [R. 521.] She had surgery to repair a tibia fracture and was hospitalized for several days thereafter. Tutson treated with pain medication and physical and occupational therapy, although she regularly failed to attend the therapy appointments after her discharge from the hospital. Her condition improved.

Dr. Vannerson submitted two residual functional capacity questionnaires. The first was dated September 27, 2012; the second was dated July 17, 2013. The earlier assessment concluded that Tutson could sit for 60 minutes at a time, stand/walk for 15 minutes at a time, sit for a total of 8 hours in an 8-hour workday, and stand/walk for a total of 4 hours in an 8-hour workday. [R. 459.] The physician opined that Tutson was physically capable of working an 8-hour day, 5 days a week on a sustained basis at "a

---

[1] Because the parties' briefs and the ALJ's decision thoroughly discuss the medical evidence, the Court merely highlights some of it to provide necessary factual background for this opinion.

2

sedentary job." [R. 460.] In the July 2013 assessment, she stated that Tutson could only sit for 15 minutes at a time and for a total of 2 hours in an 8-hour workday. [R. 468.] Dr. Vannerson said that Tutson could stand/walk for "0" minutes at one time, and stand/walk for a total of 1 hour in an 8-hour day. [*Id.*] She concluded that Tutson was not physically capable of full-time work. [R. 469.]

Tutson testified about her physical and mental impairments and her functional activities. Though she alleged disability since 1999, she claimed that she became disabled two or three years prior to the hearing when her "back went out." [R. 50.] In late March 2013, she sustained a gunshot wound to her left leg when her cousin shot her for "no reason." [R. 53.] She stated that she wears a boot and always will. She also has a walker. [R. 54.] She said that she sees her primary care physician Dr. Vannerson every one or two months. [R. 54.] Tutson testified that she could stand for 5-10 minutes at one time, sit for 15-60 minutes at a time, and walk half a block. [R. 60-61.]

Tutson was 40 years old at the time of the hearing. [R. 52.] She had an 11th grade education. [R. 53.] In 2012 (after her alleged onset date), she was going to school to obtain her GED. She attended classes four days per week for around four hours a day. [R. 44.] She said that she would have graduated in March 2013, but she "got shot." [R. 45.] She was planning to return and complete the program. [R. 46.] In 2010-2012 she babysat three children (ages 7, 5 or 6, and 9 months in 2012) twice a week from 9 a.m. until 4 p.m. [R. 46-47.] She said that the 9 month old sat on her bed and explained that the 7 year old helped her with the infant. [R. 58-59.] In 2009 she cleaned houses one or two times per

3

month. [R. 48.] She has past work experience at a Taco Bell as a cashier and cleaning the tables and restrooms. [R. 44.]

Using the five-step sequential process for analyzing disability claims, *see* 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found that Tutson had not engaged in substantial gainful activity since the application date of August 17, 2012. [R. 25.] The ALJ determined that Tutson had severe impairments of lumbar spine disorder, shoulder disorder, depression, anxiety with post-traumatic stress disorder, and history of cocaine and marijuana abuse, and beginning in March 2013, she also had a left tibia disorder status post-gunshot wound. [*Id.*] None of these, singly or in combination, meets or medically equals the severity of a listed impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. [R. 26.]

ALJ Martin assessed Tutson's residual functional capacity, concluding that she could perform a full range of light work with the following restrictions:

> She requires a sit-stand option and change of position opportunity as often as every 30 minutes. [She] must avoid climbing ladders, ropes, and scaffolds, as well as avoid more than occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. Moreover [she] must avoid overhead reaching tasks and dangerous work hazards (including protected heights and exposed machinery). Overall [she] is limited to routine, uninvolved tasks not requiring a production rate/fast assembly quota pace.

[R. 27.] At the hearing, the ALJ posed a hypothetical to the VE to determine what jobs, if any, Tutson could perform. She asked the VE to assume an individual with Tutson's age, education, and work background who:

> can perform at a full range of light work activities but will need to have a sit/stand option in the work place. Has the opportunity to do the job either sitting or standing and changing that position as often as every 30 minutes. No lateral or scaffold climbing. And only occasional postural otherwise.

4

> They need to avoid overhead reaching tasks. They need to avoid exposure to dangerous work hazards which would be unprotected heights and exposed machinery. Finally, they're limited to routine uninvolved type of work activities at a nonproductive rate or fast assembly pace and this is because of pain or mental health distractions that would prevent detailed decision making.

[R. 69.] The VE testified that such an individual could not perform Tutson's past work, but could perform other jobs including silverware wrapper, maker, and sorter. [R. 69-70.] Based on the VE's testimony, the ALJ determined that Tutson was unable to perform any past relevant work but could work as a silverware wrapper, marker, and garment sorter. [R. 32-33.] Therefore, the ALJ decided that Tutson was not under a disability as defined under the Social Security Act. [R. 33.] The Appeals Council denied review, and Tutson commenced this action, seeking judicial review.

## II.     Discussion

Judicial review of an ALJ's decision is limited to determining whether the findings are supported by substantial evidence and whether there has been an error of law. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The district court considers the record as a whole but cannot reweigh the evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718. An ALJ is not required to mention every piece of evidence in the record

but must build a "logical bridge" from the evidence to her conclusions. *Varga*, 794 F.3d at 813.

In seeking judicial review, Tutson argues that the ALJ improperly discounted treating physician Dr. Vannerson's July 2013 medical opinion regarding Tutson's limitations. She also argues that the ALJ's hypothetical question to the VE did not account for all of her limitations, which she attributes to errors at prior steps in the sequential evaluation process. More specifically, she contends that the ALJ failed to account for her moderate difficulties in concentration, persistence, or pace.

Generally, a treating physician's opinion about a medical condition is given more weight than the opinion of other, non-treating medical sources. *See* 20 C.F.R. § 404.1527. This is because a treating physician is more familiar with the claimant's conditions and circumstances. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). When a treating physician's opinion on the nature and severity of a medical condition is well supported by medical findings and not inconsistent with other substantial record evidence, the regulations entitle it to controlling weight. *Id*; *see* 20 C.F.R. § 404.1527(c)(2). If an ALJ does not give a treating physician's opinion controlling weight, then she must consider certain factors in deciding how much weight to give it. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2). An ALJ is not required to discuss every such factor in her decision, but when the decision does address the factors, the Court is better able to evaluate whether the ALJ gave appropriate weight to the treating physician's opinion. *See Scrogham*, 765 F.3d at 697. An ALJ must give "good reasons" for rejecting a treating physician's opinion. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).

The ALJ gave Dr. Vannerson's July 17, 2013 residual functional capacity assessment "little weight." [R. 31.] This assessment, the ALJ found, was not inconsistent with the first functional capacity assessment from September 2012, but rather "reflects a healing period for the claimant after her gunshot wound" and that "after healing, [her] functional ability rose more to at least the limitations outlined in B8F," referencing the September 2012 RFC assessment. [*Id.*] Tutson argues that in deciding how much weight to give Dr. Vannerson's opinion, the ALJ did not discuss the regulatory factors, and thus the Court cannot review whether she properly determined not to give much weight to that opinion, citing *Scrogham*, 765 F.3d at 697. Yet the Court can assess whether the ALJ's decision to give Dr. Vannerson's July 2013 opinion "little weight" was appropriate.

In order to be found disabled under the Social Security Act, Tutson has to show that her impairment "can be expected to result in death" or "has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3). The ALJ understood the July 2013 opinion to reflect a "healing period" following Tutson's gunshot wound. [R. 31; *see also* R. 29 (noting that there was no indication in the record that Tutson's gunshot injury was permanently disabling or causing more limitations than she had before that injury).] Dr. Vannerson indicated that Tutson's progress was "fair" [R. 468], but nothing in her opinion reasonably suggests that the impairment or impairments from her gunshot injury were expected to last 12 months or more, or result in death.

Furthermore, the ALJ correctly noted that the July 2013 opinion limited Tutson to no standing and/or walking at one time [R. 468], yet Dr. Vannerson failed to provide any

7

medical explanation as to why Tutson was unable to stand or walk. [R. 29.] The ALJ contrasted that opinion with the fact that Tutson had demonstrated the ability to stand and walk at the September 2013 hearing. [*Id.*] Thus, the restriction to no standing or walking was inconsistent with the ALJ's own observations almost two months after Dr. Vannerson gave her opinion. Besides, as the ALJ correctly noted, Tutson was last seen for follow-up regarding her gunshot injury three months after her injury, on June 24, 2013, when, despite "very minimal healing at the fracture site," her left tibial intramedullary nail was "stable without acute complicating features." [R. 479.] She was instructed to continue weight bearing as tolerated in her boot and was going to be returned to physical therapy. [*Id.*] The Court finds that ALJ Martin gave good reasons for discounting Dr. Vannerson's July 2013 opinion as to Tutson's functional limitations.

Turning to Tutson's second argument, the hypothetical question to the VE, like the RFC assessment, must account for all of the claimant's limitations supported by the medical record, including deficiencies in concentration, persistence or pace. *Varga*, 794 F.3d at 813; *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). However, the ALJ need not use the "concentration, persistence, or pace" terms where her hypothetical otherwise captures the claimant's deficiencies in these areas. *See Yurt*, 758 F.3d at 857-58; *O'Connor-Spinner*, 627 F.3d at 619 (stating that the court has not insisted that the "concentration, persistence and pace" terminology be used in the hypothetical in all cases). To the extent Tutson contends that the ALJ's hypothetical was flawed because it was based on alleged errors by the ALJ in discounting Dr. Vannerson's opinion, this issue has already been addressed.

Tutson further argues that the ALJ's hypothetical failed to account for the moderate difficulties she found Tutson to have in an ability in concentration, persistence, or pace.[2] She submits that ALJ's restriction to "routine, uninvolved tasks not requiring a production rate/fast assembly quota pace" [R. 27] did not sufficiently account for her limitations in concentration, persistence, and pace.  The ALJ did find that Tutson has moderate difficulties in concentration, persistence, or pace. [R. 26.]  This finding was based on Tutson's testimony that her medication causes drowsiness that makes her unable to concentrate when she first wakes up in the morning [R. 64] and that she had difficulty sitting still without fidgeting and moving around. [R. 60.]  The ALJ did not merely limit Tutson to "simple, repetitive work," which was problematic in other cases such as *O'Connor-Spinner*, 627 F.3d at 620.  Rather, she imposed further limitations, restricting Tutson "to routine uninvolved type of work activities at a nonproductive rate or fast assembly pace and this is because of pain or mental health distractions that would prevent detailed decision making." [R. 69.]  This hypothetical adequately captures Tutson's limitations in concentration, persistence, or pace. *See O'Connor-Spinner*, 627 F.3d at 619 (stating that the court has "let stand an ALJ's hypothetical omitting the terms

---

[2] Tutson notes that the consulting clinical psychologist opined that her symptoms significantly and negatively impacted her ability to interact with others and engage in daily functioning tasks [R. 457] and that she testified to having depression and anxiety that causes "[c]onstant crying." [R. 64.]  However, she has failed to develop any argument on these points, so any such an argument is waived.  Besides, it is unclear how the alleged limitations in social interaction and activities of daily living would have affected her concentration, persistence, or pace.  And the ALJ found Tutson to have only mild restrictions in her activities of daily living and social functioning. [R. 26.]  These findings are supported by substantial evidence, including the evidence that Tutson attended classes several days a week an attempt to earn her GED, she rode the bus to and from school, and she did her babysitting job, all since the alleged onset of disability.

'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.").

## Conclusion

For the foregoing reasons, the Commissioner's decision should be affirmed. Final judgment shall be duly entered.

DATED: 07/15/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record